UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                                                        REPORT
                                           Plaintiff,                                  and
                              v.                                               RECOMMENDATION

JANICE CARROLL,                                                        19-CV-1709-JLS-LGF

                                           Defendant.
_____

APPEARANCES:          PINCUS LAW GROUP
                              Attorneys for Plaintiff
                              SHERRI JENNIFER SMITH, and
                              BARRY MICHAEL WEISS, of Counsel
                              425 RXR Plaza
                              Uniondale, New York  11556

                              THE LAW FIRM OF ELIAS C. SCHWARTZ, PLLC
                              Attorneys for Plaintiff
                              KEVIN T. MacTIERNAN, of Counsel
                              343 Great Neck Road
                              Great Neck, New York  11021


**<u>JURISDICTION</u>**

        This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on

March 11, 2022, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Plaintiff's motions for default judgment of foreclosure and sale with attorney fees filed

September 16, 2022 (Dkt. 23), and February 28, 2023 (Dkt. 29).

## BACKGROUND and FACTS[1]

Plaintiff United States of America ("Plaintiff"), commenced this real property foreclosure action pursuant to New York Real Property Actions and Proceedings Law ("N.Y. RPAPL" or "RPAPL") Art. 13, §§ 1301-1391, seeking to foreclose on a mortgage ("the Mortgage") encumbering the premises located at 289 West Main Street, in Springville, in Erie County, New York ("the Property" or "the premises"). Plaintiff is the holder of the Mortgage with is secured by an underlying promissory note ("the Note").

Plaintiff specifically alleges that on April 26, 2011, Plaintiff, acting through the Rural Housing Service of the United States Department of Agriculture, lent Defendant Janice Carroll ("Defendant" or "Carroll"),[2] a sum of $116,000.00, which Defendant promised to repay at an interest rate of 4.50%.  Complaint ¶ 2.  The Note is secured by the Mortgage.  *Id*. ¶ 4.  On April 26, 2011, the Mortgage was recorded in the Erie County Clerk's Office in mortgage book 13532, at page 2499.  *Id*. ¶ 5.  Plaintiff claims that Defendant has violated the provisions of the Mortgage and Note by failing to pay the required monthly installments of principal and interest beginning September 26, 2018, and by failing to pay the real property taxes associated with the Property.  *Id*. ¶ 7.

On December 2, 2020, Plaintiff, asserting it was unable to serve Carroll within New York, or, despite due diligence, to ascertain where Plaintiff resides, maintains an office to conduct business, or a place where Carroll can receive mail, moved to effect service by publication (Dkt. 10), which the court granted on February 8, 2021 (Dkt. 11).

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.
[2] Plaintiff also named as defendants John Doe, Mary Roe, and XYZ Corporation ("Doe Defendants"), all of which were terminated as defendants on September 13, 2022 (Dkt. 22).

On May 21, 2021, Plaintiff filed an Affidavit of Publication (Dkt. 12), attesting service by publication as directed by the February 8, 2021 order had been completed.

On June 18, 2021, Plaintiff moved for entry of default against Carroll who, despite service by publication, has yet to defend this action or to otherwise appear. (Dkt. 13).  On June 21, 2021, entry of default was made by the Clerk of Court, with a copy mailed to Carroll at the subject Property's address (Dkt. 14), which was returned as undeliverable on June 28, 2021 (Dkt. 15).

On February 16, 2022, Plaintiff filed a motion seeking default judgment and foreclosure sale of the Property and an award of attorney fees Plaintiff incurred in connection with the foreclosure and sale (Dkt. 18) ("First Motion").[3]  Defendant did not respond in opposition to the First Motion.  In a combined Report and Recommendation / Decision and Order filed September 13, 2022 (Dkt. 22) ("September 13, 2022 R&R"), the undersigned recommended the request for default judgment of foreclosure and sale be denied based on Plaintiff's failure to comply with N.Y. RPAPL § 1306 ("§ 1306"), requiring Plaintiff file with the Superintendent of the New York State Department of Financial Services certain information pertaining to the subject mortgage.  September 13, 2022 R&R at 9-10.  The undersigned also recommended Plaintiff's request for attorney fees be denied because the request, which was not accompanied by the requisite contemporaneous time records, was insufficient.  *Id*. at 10-11.

On September 16, 2022, while the September 13, 2022 R&R was pending before Judge Sinatra, Plaintiff filed another motion seeking a default judgment of foreclosure and sale as well as attorney fees (Dkt. 23) ("Plaintiff's Second Motion").  Plaintiff's

---

[3] The First Motion also requested the caption be amended to remove the names of several "John Doe" defendants and that request was granted.  *See* September 13, 2022 R&R at 12.

Second Motion is essentially identical to the First Motion, except that it is accompanied by, *inter alia* and as relevant here, an exhibit showing Plaintiff's compliance with § 1306 (Dkt. 23-9), and the Attorney Affirmation [of Sherri J. Smith, Esq.] for Attorneys Fees (Dkt. 23-3) ("Smith Affirmation"), that putatively provides the contemporaneous time records that did not accompany Plaintiff's First Motion which was the basis for denying Plaintiff's request for attorney fees.  By Decision and Order filed October 18, 2022 (Dkt. 27), District Judge John L. Sinatra, Jr. accepted and adopted the September 13, 2022 R&R.

On February 28, 2023, Plaintiff filed yet another motion seeking a default judgment of foreclosure and sale, as well as requesting an award of attorney fees (Dkt. 29) ("Plaintiff's Third Motion"), which is essentially identical to Plaintiff's Second Motion. Plaintiff's Third Motion is accompanied by the attached proposed Judgment of Foreclosure and Sale (Dkt. 29-1), Attorney Affirmation [of Barry M. Weiss, Esq.] for Attorneys [*sic*] Fees (Dkt. 29-2) ("Attorney Fees Request"),[4] the Attorney Affirmation [of Barry M. Weiss, Esq.] for Judgment of Foreclosure and Sale (Dkt. 29-3) ("Weiss Affirmation"), a Certificate of Service (Dkt. 29-4), and a single volume of exhibits A through I (Dkt. 29-5) ("Plaintiff's Exh(s). ___").[5]  By Text Order entered March 3, 2023 ("Text Order"), Defendant was given until April 3, 2023 to respond with any replies due by April 17, 2023.[6]  The copy of the Text Order mailed to Defendant at the premises

---

[4] The Attorney Fees Request submitted in support of Plaintiff's Third Motion is identical to the one submitted in connection with Plaintiff's Second Motion (Dkt. 23-3) except for the name of the attorney making the affirmation.

[5] Because Plaintiff includes several exhibits denominated by the same letter, with no readily discernible order, the court, in the interest of clarity, when referring to such exhibits, references the specific page number of Dkt. 29-5.

[6] Although Defendant's time to respond continues beyond the date of this Report and Recommendation, because Defendant no longer occupies the mortgaged Property, has provided no forwarding address, has yet to appear in this action, and everything mailed to the Defendant at her last known address, *i.e.*, the

was returned as undeliverable, bearing a stamp indicating "Return to Sender – Vacant – Unable to Forward."  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Second Motion should be DISMISSED as moot; Plaintiff's Third Motion should be GRANTED as to the request for default judgment, but should be DENIED as to the requests for default damages, for entry of a judgment of foreclosure and sale, and for attorney fees.

## DISCUSSION

### 1.    Default Judgment

Plaintiff's Third Motion seeks Judgment of Foreclosure and Sale of the Property pursuant to Fed. R. Civ. P. Rule 55(b) ("Rule 55___") pertaining to default judgments. "Rule 55 provides a 'two-step process' for the entry of judgemnt against a party who fails to defend: first the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  The entry of a default pursuant to Rule 55(a), "while establishing liability, 'is not an admission of damages.'"  *Id*. (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 83 n. 6 (2d Cir.2009)).  It is the second step, entry of a default judgment pursuant to Rule 55(b) that "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the

_____

mortgaged property, was returned as undeliverable, it is not likely Defendant will seek to file any response in opposition to Plaintiff's Third Motion.  Moreover, with the entry of default against Defendant on June 21, 2020, *see* Dkt. 14) a determination Defendant has not challenged, Defendant is not entitled to any notice or opportunity to respond.  *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally of by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."); *New York v. Green*, 420 F.3d 99, 105 (2d Cir. 2005) ("By its terms, Rule 55(b)(2) requires advance written notice only if the party against whom a default judgment is sought has 'appeared in the action.'").

extent permitted by Rule 54(c)."  *Id.*  In the instant case, the first step was satisfied on June 21, 2021 when default pursuant to Rule 55(a) was entered, (Dkt. 14), and the court thus must consider whether the record supports entry of default judgment pursuant to Rule 55(b).

On a Rule 55(b) motion for default judgment, "a court must evaluate the following three factors: (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *First Technology Capital, Inc. v. Airborne, Inc.*, 378 F.Supp.3d 212, 217 (W.D.N.Y. 2019) (citations and quotation marks omitted).  A defendant's failure to appear or to respond meets the procedural requirements for entry of default under Rule 55(a), *see United States v. Knapp*, 2022 WL 2828994, at * 3 (N.D.N.Y. July 20, 2022), and the court thus discusses liability.

By failing to answer the Complaint or to otherwise oppose foreclosure or this motion, Defendant is deemed to have admitted the Complaint's factual allegations for entry of a default judgment under Rule 55(b).  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("a party's default is deemed to constitute a concession of all well pleaded allegations of liability.").  *See Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (a court's entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.").  Nevertheless, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter

of law when the factual allegations of the complaint are taken as true." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).  Further, "[t]he decision whether to enter default judgment is committed to the district court's discretion . . . ."  *Greathouse v. JHS Sec., Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).  Even when a defendant admits all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground.  *Mickalis Pawn Shop, LLC*, 645 F.3d at 137.  Significantly, prior to entering default judgment, "a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'"  *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).  Having previously found Plaintiff met Rule 55(b)'s procedural requirements for default, the court now considers whether Plaintiff has satisfied the substantive requirements of its claim.

As relevant here, "[i]n New York, prior to commencing a residential foreclosure action, a lender must comply with certain requirements set forth in the Real Property Actions and Proceedings Law."  *CIT Bank N.A. v. Schiffman*, 168 N.E.3d 1138, 1140 (N.Y. 2021); *see OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015) (same).  A valid claim for relief under N.Y. RPAPL requires the plaintiff first establish the common law elements of: (1) the existence of a debt; (2) that is secured by a mortgage; and (3) a default on that debt.  *Conklin*, 310 F.R.D. at 44 (citing *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 Fed.Appx. 30, 32 (2d Cir. 2012)).  Second, the plaintiff must comply with RPAPL service and filing requirements: (1) service of the statutory notice on the mortgagor prior to commencing the action pursuant to N.Y. RPAPL § 1302; (2)

service of the statutory notice on the mortgagor entitled "Help for Homeowners in Foreclosure" with the summons and complaint pursuant to N.Y. RPAPL § 1303; (3) service pursuant to N.Y. RPAPL § 1304 ("§ 1304") of a notice entitled "You May Be at Risk of Foreclosure" at least 90 days before commencing a foreclosure action ("90-day notice"); (4) filing the required information with the superintendent of the New York State Department of Financial Services pursuant to N.Y. RPAPL § 1306 ("§ 1306"); (5) service of a summons containing specified language; and (6) filing the notice of pendency in compliance with N.Y. RPAPL § 1331 and New York C.P.L.R. § 6511(a). *Id.* In the instant case, Plaintiff has alleged that Carroll owes a debt, that her debt is secured by a mortgage in favor of Plaintiff, and that she is in default on that debt. Complaint ¶¶ 2-8. Plaintiff thus has established the so-called "common law elements" of a mortgage foreclosure claim. *Conklin*, 310 F.R.D. at 44. Plaintiff has also submitted evidence demonstrating its compliance with the N.Y. RPAPL requirements.

In particular, Plaintiff has shown compliance with RPAPL § 1331 and CPLR § 6511(a) by filing a notice of pendency and copy of the Complaint with the Erie County Clerk. Plaintiff's Exh. C (Dkt. 29-5 at 16-17 (copy of the Summons and Complaint bearing Erie County Clerk stamp); Plaintiff's Exh. G (Dkt. 29-5 at at 113-19 (notice of pendency and legal description of the Property bearing Erie County Clerk stamp). The copy of the foreclosure notice required by N.Y. RPAPL §§ 1303 and 1320 and filed in this court contains, as required, a copy of the Mortgage and Note, attaching the notice of default, a notice listing sources of information and assistance to homeowners in foreclosure, and the notices are in a particular font specifically advising Defendant that

she is in default and in danger of losing her home.  Plaintiff's Exhs. A through I (Dkt. 29-5).

As discussed above, Background and Facts, *supra*, at 2-3, when Plaintiff was unable to obtain personal service on Defendant within New York, this court approved service by publication with which Plaintiff complied.  Insofar as § 1304's 90-day notice provision requires that where the involved mortgage sought to be foreclosed is a "home loan," *i.e.*, a "debt incurred by the borrower primarily for personal, family, or household purposes," N.Y. RPAPL § 1304[6](a)(1)(ii), the requisite 90-day notice must be served on the borrower by registered or certified mail, as well as by first-class mail, N.Y. RPAPL § 1304[2], at least 90 days prior to commencing legal action against the borrower.  N.Y. RPAPL § 1304[1] ("90-day notice").  Although the record here establishes Defendant was served by publication, and thus does not establish the requirements of § 1304 were followed, this requirement of § 1304 does not apply where, as relevant here, "the borrower no longer occupies the residence as the borrower's principal dwelling."  N.Y. RPAPL § 1304[3].  Because the Property is vacant, which was one of the grounds on which Plaintiff sought leave for service by publication, it logically follows the Property is no longer Plaintiff's principal dwelling such that § 1304's required service of the 90-day notice prior to commencing legal action does not apply.

Also filed in support of Plaintiff's Third Motion is an updated 90-day notice Plaintiff originally registered on September 24, 2019, with the New York State Department of Financial Services ("DFS"), as required by N.Y. RPAPL § 1306 ("updated Financial Services Document").  Plaintiff's Exh. E (Dkt. 29-5 at 108-10).  The filing of the updated Financial Services Document corrects the deficiency that caused Plaintiff's

First Motion to be denied.  Specifically, the Financial Services Document attached to the Complaint as Exh. D indicates that the "Filing Status" is "Step 1 Incomplete – Missing Mortgagee Info."  In connection with the First Motion, Plaintiff did not address what information is missing and the court was unable to discern whether the Financial Services Document satisfied § 1306.  September 13, 2022 R&R at 9-10 (citing both *Knapp*, 2022 WL 2828994, at * 5, and *United States v. Scott*, 2021 WL 4942076, at *2 (N.D.N.Y. Oct. 22, 2021), for the proposition that the plaintiff could be denied a request for an order of foreclosure and sale where the complaint did not contain an allegation that the plaintiff complied with § 1306, a condition precedent to suit).  In support of Plaintiff's Third Motion, Mr. Weiss explains that the Filing Status indicated Step 1 was incomplete because the requisite mortgagee information was missing as the result of a technical issue with DFS's internet website through which Plaintiff was required to register the 90-day notice.  Plaintiff contacted DFS and on January 3, 2020 was advised that "the technical issue with 'Step 1' registration was completed so that 'Step 2' could be completed."  Weiss Affirmation ¶ 26.  Accordingly, Plaintiff filed Plaintiff's Exh. E showing Step 2 registration is complete, which Plaintiff explains would not have been allowed had Step 1 not been completed.  *Id*.  Plaintiff thus has established its compliance with § 1306.

With the requirements of § 1306 satisfied, all of N.Y. RPAPL's requirements for the foreclosure of a mortgage are fulfilled.  Accordingly, Plaintiff has satisfied the procedural requirements for the requested default judgment.  Plaintiff's Third Motion should be GRANTED as to Plaintiff's request for default judgment.

2.     **Default Damages**

Assuming, for the sake of this discussion, the District Judge accepts the recommendation that default judgment be granted in favor of Plaintiff, Plaintiff must still prove damages.  In the Complaint, Plaintiff seeks damages pursuant to the terms of the Note and Mortgage including the unpaid principal balance of the Note with accrued interest, late charges, and other fees, totaling $ 125,876.24.  *See* Complaint ¶ 9.  In support of Plaintiff's Third Motion, Plaintiff now seeks $ 149,571.72, which amount Plaintiff maintains is due and owing on the Mortgage as of October 13, 2021.  *See* Weiss Affimation ¶ 18 and Exh. I (Dkt. 29-5 at 125-30).  Although Plaintiff has provided multiple documents and schedules in an attempt to substantiate the amount of damages requested, the requested damages are insufficiently supported.

"'A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those for relating to damages.'"  *Nationstar Mortgage LLC v. Atanas*, 285 F.Supp.3d 618, 626 (W.D.N.Y. 2018) (quoting *1ˢᵗ Bridge LLC v. 682 Jamaica Ave., LLC*, 2010 WL 4608326, at * 3 (W.D.N.Y. July 13, 2010)).   "Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable."  *OneWest Bank, NA v. Raghunath*, 2015 WL 5772272, at * 7 (E.D.N.Y. Sept. 8, 2015) (citation omitted), *report and recommendation adopted*, 2015 WL 5774784 (E.D.N.Y. Sept. 22, 2015).   "'On an inquest for damages following a default, plaintiff bears the burden of proof and must introduce sufficient evidence to establish the amount of damages with reasonable certainty.'"  *Atanas*, 285 F.Supp.3d at 626 (quoting *RGI Brands LLC v. Cognac Brisset-Aurige, S.a.r.l.*, 2013 WL 1668206, at * 6 (S.D.N.Y. Apr. 18, 2013)).  Significantly, "'[a] plaintiff's statement as to the amount of damages alone does not

provide the requisite reasonable certainty.'"  *Id*. (quoting *RGI Brands LLC*, 2013 WL 1668206, at *6).  Further, should a plaintiff, on a damages inquest, fail to sufficiently support its damages, "'the court should decline to award any damages, even though liability has been established.'"  *Id*. (quoting *Lenard v. Design Studio*, 889 F.Supp.2d 518, 527 (S.D.N.Y. 2012).  *See U.S. Bank National Association as Trustee for the RMAC Trust, Series 2016-CTT v. Nanan*, 2022 WL 9449632, at *5-7 (E.D.N.Y. Oct. 14, 2022) (declining to award default damages where the plaintiff failed to sufficiently document the requested damages), *report and recommendation adopted*, 2022 WL 16855727 (E.D.N.Y. Nov. 10, 2022).  In the instant case, Plaintiff has failed to provide sufficient documentation for the default damages requested.

Preliminarily, the court is unable to discern whether the principal balance reported alleged by Plaintiff is correct.  The record does not include an amortization schedule for Defendant's mortgage payments prior to defaulting on the Mortgage. Although Plaintiff is not required to provide a full amortization schedule to document the amount of damages, Plaintiff provides a spreadsheet of account activity ("the spreadsheet")[7] for the year beginning January 1, 2018, when the unpaid principal balance is shown as $ 105,728.11 with an "unapplied" funds balance of $ 421.33.[8]  The first reported account activity is the receipt on January 2, 2018, of $ 500, along with a subsidy amount of $ 217.47, and $ 65.50 taken from the unapplied funds, totaling $ 782.97, that was recorded as a payment that was due March 26, 2017, with $ 166.36 applied to principal, $ 396.48 applied to interest, and $ 220.13 applied to escrow.

---

[7] Filed as Plaintiff's Exh. B (Dkt. 29-5 at 131-47).
[8] The source of the unapplied funds is not readily discernible from the record.

Spreadsheet p. 1 (Dkt. 29-5 at 132).  In accordance with this payment, the unapplied

funds balance was reduced by $ 65.50 and the principal balance was reduced by

$ 166.36.  *Id*.  Subsequent account activity entries include, *inter alia*, the advancement

of funds to cover real property taxes for the Town of Concord ($ 607.18 on February 8,

2018), and the Village of Springville ($ 61.38 on June 14, 2018), and homeowner's

insurance ($ 490.00 on June 15, 2018).  *Id*.  The next entry on Defendant's account,

dated June 29, 2018, shows no payment was received, yet $ 4,370.59 was billed for

fees with the offset recorded to indicate additional funds Defendant owes.  The next

entry, also dated January 2, 2018, is recorded as a payment applied for a payment due

date of April 26, 2017, which shows no money was received other than the subsidy

amount of $ 217.47, and $ 345.83 from the unapplied funds, totaling $ 563.30, of which

166.98 was applied to principal and $ 395.86 was applied to interest, with the unapplied

funds and principal balances reduced in accordance with the payment.  *Id*.  On

September 4, 2018, no funds were received, yet $ 10.46 was taken from the unapplied

funds and applied to principal, with the principal balance reduced by $ 10.46 to

$ 105,384.31, and the unapplied funds balance reduced to $ 0.  *Id*.  There are two

entries for September 4, 2018, both of which increased the principal balance.  The first

entry is for reamortization (adding an amount to the unpaid principal balance with the

interest to be paid then calculated on the newly increased principal), of $ 2,293.97 in

unpaid interest, increasing the principal balance to $ 107,678.28, and the second is for

reamortization of $ 4,370.59 in fees, increasing the principal balance to $ 112,048.87,

*id*., the unpaid principal balance which Plaintiff seeks to recover in this foreclosure

action.  The court, however, is unable to discern whether the starting principal balance

of $ 105,728.11 shown for January 1, 2018 is correct, nor does the record indicate what makes up the reamortized fees and the reamortized interest, such that this documentation is deficient.

To illustrate the problem, the Note originated on April 26, 2011 with an original principal balance, secured by the Mortgage, of $ 116,000, the annual interest rate on the Note was fixed at 4.50%, and the term of the Note was 396 months, *i.e.*, 33 years. Dkt. 29-5 at 2.  Based on these terms, the monthly payment for principal and interest was $ 562.84 ("monthly mortgage payment"),[9] with the initial payment due on May 26th, 2011, and each successive payment due on the 26th of every subsequent month until April 26, 2044, when the Note was to be paid in full.  *Id*.  Payments were to be applied to interest before principal, *id*., and if a payment was not made by the date due, interest was to accrue on past due principal and interest.  *Id*. at 3.  In other words, if a monthly mortgage payment was not timely made, the interest would continue to accrue on the unpaid principal balance such that when the monthly mortgage payment was eventually received, it was first applied to interest, albeit for more days than if the payment were timely received, with the leftover applied to decrease the principal balance.

For the initial $ 562.84 monthly mortgage payment that was due May 26, 2011, $ 435.00 would have been applied to interest with the remaining $ 127.84 applied to principal, thus reducing the principal balance from $ 116,000 to $ 115,872.16.[10] Assuming the following $ 562.84 monthly interest payment was timely made on June

---

[9] The monthly mortgage payment on the Note is only for principal and interest and does not include any amount for escrow.  Although the Spreadsheet indicates the real property taxes and insurance were paid by the loan servicer through escrowed funds, the record is devoid of any calculation the amount Plaintiff was required to remit on a monthly basis for escrow.

[10] Calculated as follows: ($116,000 X 4.5%) / 12 months = $ 435.00; $ 562.84 – 435.00 = $ 127.84.

26, 2011, $ 434.52 would have been applied to interest with the remaining $ 128.32 applied to principal, thus reducing the principal balance from $ 115,872.16 to $ 115,615.04.[11]  Continuing with this pattern, by January 2, 2018, the date Plaintiff made the March 26, 2017 payment as recorded on the Spreadsheet, assuming all payments had until then been timely made, the next payment due would have been for January 26, 2018, which would have been the 81st payment at which time the interest portion of the $ 562.84 monthly mortgage payment would have been $ 390.37, with a principal portion of $ 172.47 after which the principal balance would have been $ 104,099.00.  Only $ 500.00, however, was submitted on January 2, 2018 for the March 26, 2017 payment, of which $ 396.48 was applied to interest in accordance with the Note's provision that mortgage payments be applied first to interest and the remaining amount to principal.  Further, the unpaid principal balance after the monthly mortgage payment was applied was $ 105,561.75.  This scenario strongly suggests Plaintiff defaulted on the monthly mortgage payments prior to January 2, 2018, yet the Spreadsheet shows it was not until September 4, 2018, that unpaid interest and escrow funds advanced on behalf of Plaintiff were capitalized, *i.e.*, added to the principal balance on which the 4.50% interest was then calculated.  Further, it was not until April 23, 2019 that Plaintiff declared the Note in default.  *See* Acceleration Notice, Dkt. 29-5 at 119-24.  Nor does the Acceleration Notice indicate that any additional funds were advanced to cover real property taxes and insurance on the property.

Subsequent entries on the loan servicing spreadsheet further confound that matter which is not clarified by the affidavit of one Walter Lindsey, Jr. ("Lindsey

---

[11] Calculated as follows: ($ 115,872.16 X 4.5%) / 12 months = $ 434.52; $ 562.84 – 434.52 = $ 128.32.

Affidavit"), who is a lead foreclosure specialist with USDA Rural Housing Service. Plaintiff's Exh. I (Dkt. 29-5 at 125-30). Attached to the Lindsey Affidavit is Schedule A ("Schedule A" (Dkt. 2905 at 128-30)) providing a breakdown of the total amount due as of October 13, 2021 ("Schedule A"), shown as $ 149,571.72. Both Schedule A and the spreadsheet show multiple entries for "property mngment/caretaker" for amounts ranging from $ 25.30 to $ 434.49, with several dates showing multiple entries, unaccompanied by any explanation as to what work was performed. *See* Schedule A at 1-3 (Dkt. 29-5 at 128-30); Spreadsheet, *passim*. Schedule A also lists 14 items for "Property Inspections," 13 of which are for $ 25.30,[12] and one for $ 1,170.36, but there is no explanation as to why one of the property inspections is for so much more than the other 13. Each of these items is denominated on the Spreadsheet as costs for property management/caretaker. *See* Spreadsheet, *passim*. There are also seven entries ranging from $ 8.90 to $ 987.30 for "property acquisition" which are not further described. See Schedule A (Dkt. 29-5 at 130), and Spreadsheet, *passim*. Again, there is no explanation for these "property acquisition" costs.

Furthermore, it is not possible to discern how the accrued interest was calculated. For example, Schedule A shows per diem interest is $ 13.8142, with $ 15,803.49 total unpaid interest accrued as of October 12, 2021. Dkt. 29-5 at 128. Dividing $ 15,803.49 by the per diem interest of $ 13.8142 results in 1,144 days of accrued interest which, counted back from October 12, 2021, is August 24, 2018. The Spreadsheet, however, does not show any accrued interest as of August 24, 2018. According to a Notice of Acceleration included as Plaintiff's Exh. H (Dkt. 29-5 at 119-24)

---

[12] The August 7, 2020 property inspection costs is reported as $ 25.03 both on Schedule A (Dkt. 29-5 at 128), as well as on the Spreadsheet (29-5 at 136).

("Acceleration Notice"), as of April 23, 2019, the unpaid accrued interest was $ 3,401.51 which, when divided by the per diem interest of $ 13.8142 results in 246 days of accrued interest which, counted back from April 23, 2019 is August 20, 2018.  Further, in the Complaint, Plaintiff seeks unpaid interest of $ 6,630.84 as of December 19, 2019, which, when divided by the same per diem of $ 13.8142 results in 480 days of accrued interest, and counting back from December 19, 2019 is August 26, 2018.

In short, the documentation Plaintiff filed in support of default damages does not support the requested damages.  Plaintiff's Third Motion should be DENIED as to the request for default damages.  *See Nanan*, 2022 WL 9449632, at \*5-7; *Atanas*, 285 F.Supp.3d at 628.  Should Plaintiff again seek default damages, Plaintiff must provide a complete breakdown of the relevant data establishing the date Plaintiff considered the mortgage to be in default, along with the unpaid principal balance as of the date of default, all taxes, insurance and other expenses accrued as of the date of default along with a description for the claimed expenses sufficient for the court to discern such expenses are properly considered as costs of the foreclosure, an accrued interest calculation from the date of default to the date of the propose order of foreclosure and sale, and allowing for the accrual of additional interest and other payments from the date of such proposed order through the actual sale of the Property.

**3.    Judgment of Foreclosure and Sale**

Included in the papers submitted in support of Plaintiff's Third Motion is a document that is a proposed Judgment of Foreclosure and Sale for the District Judge's signature.  Dkt. 29-1 ("Proposed Order").  The Proposed Order provides for the appointment of one Mary Moorman Penn, Esq. ("Penn"), as the Referee for the sale of

the Property "at a public auction at the Supreme [Court] Courthouse for the County of Erie, 25 Delaware Avenue, Buffalo, New York 14202. . . ." Proposed Order at 2. The Proposed Order further sets forth the terms and conditions for public notice of the sale, *id*. at 2-3, the Referee's fee and commissions, *id*. at 3, the amount of the outstanding mortgage, *id*., and instructions for preparation and delivery of the deed to the successful bidder at auction as well as for disbursement of the proceeds of the sale. *Id*. at 3-4. The Proposed order is deficient for several reasons.

First, the unpaid mortgage balance of $ 149,571.72 as of October 12, 2021, as discussed above, Discussion, *supra*, at 12-17, cannot be verified by the documents submitted in support of Plaintiff's Third Motion. Although the Proposed Order provides for the further accrual of interest on the claimed unpaid mortgage balance of October 12, 2021, no provision is included for any additional funds advanced by Plaintiff for the continued payment of real property taxes and insurance on the Property. Nor does the court find proper Plaintiff's assumption that Penn will be appointed as referee for this action. As relevant here, N.Y. RPAPL § 1351[1] (McKinney's § 2020) ("§ 1351") provides that the mortgaged premises "be sold by or under the direction of the sheriff of the county, or a referee within ninety days of the date of the judgment." N.Y. RPAPL § 1351[1]. The appointment of a referee to effectuate a sale of the mortgaged property and to disburse the funds from such sale is governed by N.Y. RPAPL § 231 ("§ 231"), which, as relevant here, provides that, "[a] sale of real property made in pursuance of a judgment affecting the title to, or the possession, enjoyment or use of, real property shall be at public action to the highest bidder." N.Y. RPAPL § 231[1].[13] *See JP Morgan*

---

[13] Although § 231 refers to an "officer" as making the foreclosure sale, "[a]t a foreclosure proceeding, the actual sale is made by the referee, as an officer of the court . . . ." *Jorgensen v. Endicott Tr. Co.*, 473

*Chase v. Rajendran*, 20 N.Y.S.3d 865, 868 (Sup.Ct. Westchester Cty, 2015) (§ 231

"details the requirements for conducting a foreclosure sale. The only requirements set

forth in connection with the publication of notice of sale is 'the time and place of sale'

and 'description of the property to be sold'" (citing N.Y. RPAPL § 231[2][a])).[14]  Other

provisions on N.Y. RPAPL require the referee to ascertain and determine the amount

for which the subject property can be sold as well as whether the property should be

sold in one parcel, N.Y. RPAPL § 1321, and to distribute the proceeds of the foreclosure

sale including making certain payments including, *inter alia*, taxes, assessments, and

liens, and to file a report of the sale.  N.Y. RPAPL § 1354.

With the court's determination that Plaintiff has established its right to foreclose

upon the Property due to Defendant's default, a referee should be appointed pursuant to

§ 231 to effectuate the foreclosure and sale of the property.  In the Proposed Order,

Plaintiff requests that Mary Moorman Penn, Esq. be appointed referee to effectuate the

sale of the Property, *see* Proposed Order at 2, but Plaintiff has not provided a

description of Penn's qualifications and the court thus cannot make a recommendation

as to a referee.  *See U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v.

Christian*, 2020 WL 3918566, at *6 n. 2 (E.D.N.Y. Feb. 25, 2020) (declining to

recommend the appointment of attorney named in proposed order of judgment and

foreclosure as referee in the absence of any indication the proposed referee was

qualified for such appointment), *report and recommendation adopted*, 2020 WL

3893015 (E.D.N.Y. July 10, 2020).  Further, it is preferrable for Plaintiff to provide the

---

N.Y.S.2d 275, 276 (3rd Dept.1984) (citing *Lane v. Chantilly Corp.*, 167 N.E. 578, 579 (N.Y. 1929)
(remarking the foreclosure "sale was made by the referee as an officer of the court")).
[14] Section 231 further provides the procedures for publishing notice of the foreclosure sale, N.Y. RPAPL
§ 231[2], as well as other procedures not at issue in this action.  N.Y. RPAPL § 231[3] to [6].

names of three potential referees to accommodate the possibility that the court does not agree with Penn's appointment.  *See id.* (requiring the plaintiff identify three referees for consideration along with a brief description of their qualifications), and *Atanas*, 285 F.Supp.3d at 628 (directing plaintiff to submit the names of three proposed referees along with a brief description of their qualifications).  Accordingly, for these reasons, Plaintiff's request for an order of foreclosure and sale should be DENIED.

**4.     Attorney Fees**

In the September 13, 2022 R&R, the undersigned advised Plaintiff that the request for attorney's fees was defective because it was not supported by "contemporaneous time records specifying the relevant dates and time expended on the work done."  September 13, 2022 R&R at 11.   Based on this deficiency, it was recommended that the request for attorney fees be denied, *id*., but without prejudice to Plaintiff, upon renewing the motion for default judgment, to again request associated attorney fees, albeit properly supported by the required contemporaneous time records. *Id*.  Plaintiff's counsel, in connection with Plaintiff's Third Motion, again requests associated attorney fees and costs.

The Note executed by Defendant in connection with the Mortgage provides that in the event Defendant defaults on the note, Plaintiff "will have the right to be paid back by [Defendant] for all of its costs and expenses in enforcing this promissory note . . . includ[ing], for example, reasonable attorney's fees."  Note at 2 (Dkt. 18 at 9).  The court, however, also observes that Plaintiff has again failed to support the attorney fees request with proper contemporaneous time records including "specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'"  *See*

*Nationstar Mortg. LLC v. Nedza*, 315 F. Supp. 3d 707, 712 (W.D.N.Y. 2018) (quoting *OneWest Bank, N.C. v. Cole*, 2015 WL 4429014, at * 6 (quoting N.*Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983))).

In particular, although the Weiss Affirmation identifies the number of hours expended on specific tasks associated with this mortgage foreclosure action such as, *inter alia*, time spent opening the file, ordering and reviewing an abstract of title for the mortgaged Property, and preparing service of process on Defendant, *see* Weiss Affirmation ¶ 4(a), (b), (c), and (e), Weiss also identified hours spent on foreclosure sale activities which have yet to occur such as preparation for sale and post sale activity. *Id*. ¶ 4(h), and (i). Simply put, attorney fees may not be awarded in advance of being earned. *See Cole*, 2015 WL 4429014, at * 7 (denying request for attorney's fees because "[t]he affirmation also includes tasks that have not yet occurred, including 'Post sale activity' despite the Court not yet ordering such sale."). Although the amount of time spent on various activities is set forth in the Weiss Affirmation, no dates are provided for any of the activities that have occurred, such as the opening of the file and the title work. *See Atanas*, 285 F.Supp.3d at 625 ("the list of described services remains non-comprehensive, and there are no dates associated with the work performed" (citing *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Gross*, 255 F.Supp.3d 427, 433 (W.D.N.Y. 2017)). Further, although the Weiss Affirmation specifies the number of hours spent by a paralegal and attorney involved in performing the mortgage foreclosure proceeding activities set forth in the Weiss Affirmation, no such attorney or paralegal is identified nor are there any credentials listed for such personnel. *See Atanas*, 285 F.Supp.3d at 624-25 (considering the attorney's fee

application deficient where the application, although identifying the attorneys and paralegal involved in performing work on the foreclosure as listed in the application, failed to include any credentials for the named attorney).

In the instant case, the Weiss Affirmation does include a paragraph providing credentials including

> My qualifications are that I graduated from Widener University Delaware Law School in 2002 and was admitted to the New York State Bar in January 2003.  I was also admitted to the bars of the State of New Jersey in 2002, Pennsylvania in 2003 and Florida in 2012 as well as all corresponding Federal District Courts. Since 2008 I have practiced exclusively in the areas of creditors' rights, including foreclosure, bankruptcy and title curative matters representing mortgage lenders and servicers.

Weiss Affirmation ¶ 7.

The court, however, cannot help but observe a word-for-word identical paragraph included in the Affirmation of Sherri Jennifer Smith (Dkt. 23-3 ¶ 7), submitted in support of Plaintiff's Second Motion, thus raising the question whether it was Smith, rather than Weiss, who performed the work on this foreclosure proceeding, or whether the listed credentials pertain to yet another attorney who performs foreclosure work for the same law firm.  Regardless of the actual scenario, in its present form, the Weiss Affirmation fails to both identify both the attorney who performed the work and to describe such attorney's credentials.

Because in the instant case, Plaintiff's request for attorney's fees remains insufficiently supported for want of contemporaneous time records or "supporting documentation" that "is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done," *Cole*, 2015 WL 4429014, at * 6, Plaintiff's request for

an award of attorney fees associated with this foreclosure action should, again, be DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's Second Motion (Dkt. 23) should be DISMISSED as moot; Plaintiff's Third Motion (Dkt. 29) should be GRANTED as to the request for default judgment, but should be DENIED as to the request for default damages, the request for entry of a judgment of foreclosure and sale, and as to the request for attorney fees associated with this mortgage foreclosure action.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 29, 2023
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and to the Defendant at her last known address at 289 West Main Street, Springville, New York 14141.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 29, 2023
            Buffalo, New York